■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD GRIFFIN, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Pesce, J.), rendered January 9, 1987, convicting him of robbery in the first degree (two counts), robbery in the second degree, grand larceny in the third degree (two counts), sexual abuse in the first degree (two counts), and burglary in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial of those branches of the defendant's omnibus motion which were to suppress identification testimony.

Ordered that the judgment is affirmed.

The proof at trial established that on the afternoon of September 23, 1985, a woman, who was pushing her two infant children in a stroller, was accosted in the elevator of her apartment building by an individual whom she identified as the defendant and by another (unapprehended) man, both of whom brandished shotguns. Menacing her and her children with the shotguns, the two men took her back into her apartment, where they took various items of jewelry. In the course of the robbery, the victim was ordered to remove her clothes, and one of the men touched her vagina and felt her breasts.

Three days later, a second victim, who was taking her four-year-old son to school, was accosted in her elevator, in a building about two blocks away from the scene of the prior crime, by an individual whom she identified as the defendant, who was carrying a shotgun. Holding the gun to the child's chest, he announced that "this is a robbery," and relieved her of various gold chains and rings. Before he left, he reached into the victim's blouse and touched her breasts.

On January 10, 1986, the first victim saw the defendant

sleeping on the floor in the hallway of her building, and called the police. When the police arrived, the complainant identified the defendant as the man who had robbed her some 3½ months before. That same evening, the second victim identified the defendant in a lineup as the man who had robbed and molested her.

On appeal, the defendant contends that the second victim's lineup identification of him was the product of an unlawful arrest, and that he should have been permitted to call the first victim to testify at the suppression hearing as to the issue of probable cause for his arrest as well as regarding a subsequent confirmatory showup by the first victim at the station house. He also argues that his guilt was not proven beyond a reasonable doubt, and that the verdict was against the weight of the evidence. The defendant's contentions are without merit.

Officer Lamberson testified at the suppression hearing that he arrested the defendant on January 10, 1986. He had responded to the first victim's address, where she told him that the defendant, whom she had just seen sleeping in her fifth-floor hallway, was the man who had robbed her at gunpoint some 3½ months earlier. The officer thus had probable cause to arrest the defendant (see, People v Walker, 129 AD2d 751). It is well established that the eyewitness victim of a crime can provide probable cause for the arrest of her assailant despite the fact that her reliability has not been previously established or her information corroborated (see, People v Crespo, 70 AD2d 661). Moreover, once the defendant was lawfully arrested for the crime against the first victim, it was proper for the police to place him in a lineup for a separate, unrelated crime (see, People v Whitaker, 64 NY2d 347, cert denied 474 US 830). In any event, the crimes were highly similar, as were the descriptions of the perpetrator. Thus, it was appropriate for the police to display the defendant in a lineup viewed by the second victim (see, People v Pickett, 71 AD2d 575, affd 52 NY2d 892).

We find no improvident exercise of discretion in the hearing court's denial of the defendant's request to call the first victim to testify at the suppression hearing, in the absence of any indication that the police had lacked probable cause to arrest him (cf., People v Chipp, 75 NY2d 327). That victim's testimony was not necessary to establish whether or not the police had probable cause to arrest, and certain inaccuracies in her initial description of the robbers given to other officers on September 23, 1985, in no way diminished the fact that Officer

Lamberson had probable cause to arrest when she pointed out the defendant to him in her hallway 3½ months later and exclaimed, "That's him" *(see generally, People v Peterkin,* 75 NY2d 985).

In addition, there was no reason to suppress the first victim's in-court identification of the defendant because of her viewing of him at the station house immediately after his apprehension. Since she had already spontaneously identified the defendant as the perpetrator in her hallway, her viewing of him at the station house was merely confirmatory and the rule mandating exclusion of identification testimony based on an unduly suggestive showup does not apply *(see, People v Kelley,* 144 AD2d 386; *cf., People v James,* 138 AD2d 744; *People v Higgs,* 111 AD2d 410).

Viewing the evidence in the light most favorable to the prosecution *(People v Contes,* 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (CPL 470.15 [5]). Both eyewitness victims testified to observing their attacker carefully for a considerable period of time, at close range, under excellent lighting conditions, while their small children were being threatened and while they themselves were being robbed and fondled. Moreover, both complainants identified the defendant immediately as their attacker upon seeing him again. While there were some minor inconsistencies in the two women's descriptions of the perpetrator, these were fully explored at trial, and the jury, whose function it is to evaluate such inconsistencies and to accord them the appropriate weight *(People v May,* 122 AD2d 168), resolved the issues of identification in the People's favor *(People v Delfino,* 150 AD2d 718; *People v Carolina,* 112 AD2d 244). Resolution of issues of credibility, as well as the weight to be accorded to the evidence presented are primarily questions to be determined by the jury, which saw and heard the witnesses *(see, People v Gaimari,* 176 NY 89, 94). Its determination should be accorded great weight on appeal and should not be disturbed unless clearly unsupported by the record *(see, People v Garafolo,* 44 AD2d 86, 88). Upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (CPL 470.15 [5]).

We have examined the defendant's remaining contentions and find them to be unpreserved for appellate review, and, in

any event, without merit. Brown, J. P., Rubin, Eiber and Rosenblatt, JJ., concur.