[627 NYS2d 435]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
ADRIAN GITTENS, Appellant.

Second Department, May 30, 1995

## APPEARANCES OF COUNSEL

*Daniel L. Greenberg,* New York City *(Elizabeth Manning* and *Karen M. Kalikow* of counsel), for appellant.

*Richard A. Brown, District Attorney* of Queens County, Kew Gardens *(Steven J. Chananie, John M. Castellano* and *Meryl A. Lutsky* of counsel), for respondent.

## OPINION OF THE COURT

RITTER, J. P.

Special Agent Bradley Cheeks was part of a team of agents of the United States Department of Justice Drug Enforcement Administration (hereinafter the DEA) working at LaGuardia Airport. He was monitoring flights between New York and Washington, D.C., with the specific mission of interdicting the heavy flow of illegal drugs between the two cities. Cheeks was stationed near the ticket counters and magnetometer machines, while other agents were stationed upstairs, closer to the boarding gates. The defendant was brought to the attention of Cheeks by an airport security advisor, who noted that the defendant had, on prior occasions, waited until his flight was about to depart before he purchased a ticket with cash and rushed through the magnetometer machine.

Cheeks observed the defendant approach the magnetometer in a hurried fashion, throw his bag on the conveyor belt of the X-ray machine and rush through the magnetometer, ignoring the request of the security guard to slow down. The defendant then grabbed his bag and ran up the stairs toward the departure gates. Cheeks radioed a description of the defendant's clothing to his fellow agents and told them that he was someone they might want to "look at". Cheeks then pursued the defendant up the stairs.

Special Agent Michael Gildea, who was stationed upstairs near the departure gates, received the transmission and approached the defendant, badge in hand. In response to several general questions, the defendant, a student from Washington, D.C., stated that he had been in New York with a soccer team and that he had stayed with his girlfriend. However, he was unable to state the location of either his girlfriend's apartment or of the soccer field where he had played. At this point,

Gildea explained that he was part of a team trying to interdict cocaine and asked the defendant for permission to search his bag. The defendant consented and a subsequent search of his bag revealed cocaine concealed in a sock. The defendant was then arrested. Cheeks, from a distance, had observed the questioning and subsequent search of the defendant. On appeal, the defendant argues, among other things, that the court erred when it failed to suppress the cocaine as being the fruit of improper questioning by the DEA agents. We disagree.

The defendant argues that because Gildea's request to search his bag led him to reasonably believe that he was suspected of wrongdoing and that he was the focus of a criminal investigation, Gildea's questions had to be justified under the "common-law right to inquire", which requires a "founded suspicion that criminality is afoot" *(People v De Bour,* 40 NY2d 210, 223; *People v Hollman,* 79 NY2d 181). Here, the defendant argues, Gildea lacked such a founded suspicion. Further, he argues, because the knowledge possessed by Cheeks cannot be imputed to Gildea *(see, People v Brnja,* 50 NY2d 366; *People v Mims,* 205 AD2d 78; *People v Mitchell,* 185 AD2d 163), there was no lawful basis for the search. We disagree.

The touchstone of the Fourth Amendment right against unreasonable searches and seizures is reasonableness *(see, People v Cantor,* 36 NY2d 106; *People v Moore,* 32 NY2d 67). The court must consider "whether or not the action of the police was justified at its inception and whether or not it was reasonably related in scope to the circumstances which rendered its initiation permissible" *(People v Cantor, supra,* at 111; *People v De Bour, supra).* In applying this standard, the courts have created what is sometimes referred to as the "fellow officer" rule. Although this rule arises most frequently in cases concerning whether or not probable cause existed to arrest or search, we find the principles to be applicable in reviewing the police conduct at issue here. The fellow officer rule has been stated as follows: "The arresting officer acts with probable cause when he arrests on the direction of a *fellow officer who has probable cause* or without such direction on the basis of information received from a fellow officer who testifies at the suppression hearing concerning how he obtained his knowledge, which information itself or together with that known to the arresting officer establishes probable cause" *(People v Brnja,* 50 NY2d 366, 373, n 4, *supra; see also, People v Petralia,* 62 NY2d 47, *cert denied* 469 US 852). This

rule is based on both the presumption of veracity and accuracy afforded a communication from one police officer to another and the recognition that modern law enforcement often involves the work of a variety of officers *(see, People v Petralia, supra)*. In general, this rule is applied when there is an express communication of information or direction to take action from one officer to another *(see, e.g., People v Mims,* 205 AD2d 78, *supra; People v Mitchell,* 185 AD2d 163, *supra)*. However, we hold that the fellow officer rule applies to the facts at bar.

A number of cases from the Federal courts and other State courts, as well as a leading treatise, have applied the fellow officer rule, which allows, in essence, the imputation of knowledge from one officer to another, to cover any number of officers working together on a joint assignment despite the lack of an express communication of information or direction to take action *(see, e.g., United States v Perkins,* 994 F2d 1184, 1189 [6th Cir 1993] [collective knowledge of those "directly involved in the investigation"], *cert denied* — US —, 114 S Ct 279; *United States v Kye Soo Lee,* 962 F2d 430, 435 [5th Cir 1992] [collective knowledge of agents "working the case at the roadside"], *cert denied* — US —, 113 S Ct 1057; *United States v Bertrand,* 926 F2d 838 [9th Cir 1991] [uncommunicated information of undercover officer and lookout sufficient when they radioed to back-up officers that the defendant was headed their way]; *United States v Hoyos,* 892 F2d 1387 [9th Cir 1989] [collective knowledge of officers participating in the arrest], *cert denied* 498 US 825; *United States v Edwards,* 885 F2d 377 [7th Cir 1989] [collective knowledge of team of officers executing arrest]; *United States v Lomas,* 706 F2d 886 [9th Cir 1983] [collective knowledge of group of agents working in concert], *cert denied sub nom. Margolis v United States,* 464 US 1047; *United States v Bernard,* 623 F2d 551, 561 [9th Cir 1980] [collective knowledge of officers " 'working in close concert' "]; *see also,* 2 LaFave, Search and Seizure § 3.5 [c] [2d ed 1987]). Although we believe the net of these cases to be cast too broadly, we find the reasoning of several of these cases applying a more circumscribed version of the rule to be persuasive. When officers are working in close temporal and spatial proximity to one another, circumstances may provide one officer with grounds for a reasonable belief that a fellow officer or officers possess knowledge which, alone or in conjunction with the knowledge possessed by him, is sufficient to warrant some level of intrusive action. Under such circumstances, the

aggregate of knowledge possessed by the various officers may be considered when reviewing the propriety of the action taken *(see, United States v Ragsdale,* 470 F2d 24 [5th Cir 1972]; 2 LaFave, Search and Seizure § 3.5 [c] [2d ed 1987]; *cf., People v Bouton,* 50 NY2d 130; *People v Horowitz,* 21 NY2d 55, 60; *People v Lopez,* 95 AD2d 241).* On the other hand, when the temporal and spatial proximity grows more attenuated, and the possibility increases that the police will effectuate searches or arrests in the hope that they may be retroactively justified if challenged based on knowledge possessed by anyone connected to the action in any manner, it is not reasonable to consider the aggregate of knowledge possessed by the various officers *(see, State v Mickelson,* 18 Ore App 647, 526 P2d 583; 2 LaFave, Search and Seizure § 3.5 [c] [2d ed 1987]).* Here, we find the former circumstances to be present. Not only were Cheeks and Gildea working at all relevant times in close proximity to one another both spatially and temporally, but they were also part of a specialized team with a highly specific mission, viz., to stem the heavy and increasing flow of illicit drugs between the very cities the defendant was travelling between. Moreover, although Gildea denied that he stopped the defendant at the express direction of Cheeks, Cheeks' transmission clearly alerted Gildea to the defendant's presence and, despite the lack of an express communication to this effect, conveyed the fact that something about the defendant's person or actions had aroused his suspicions. Indeed, this information was further conveyed by the fact that Cheeks pursued the defendant up the stairs and observed, albeit from a distance, the questioning and search of the defendant by Gildea. Thus, Gildea clearly had grounds for a reasonable belief that Cheeks possessed some indicia of criminal activity warranting further investigation. Moreover, not only did the defendant's imminent departure impose an element of urgency, but the facts negate any suggestion that Gildea acted improperly in the hope that his actions would later be justified by knowledge possessed by any of the other agents involved in the operation. Therefore, we hold that it would not be unreasonable to consider the aggregate of knowledge possessed by Cheeks and Gildea. And, because the aggregate of knowledge possessed by Cheeks and Gildea was sufficient to warrant a founded suspicion that criminality was afoot, the search was properly held to be valid.

We have considered the defendant's remaining contentions and find them to be without merit.

Accordingly, the judgment should be affirmed.

COPERTINO, JOY and HART, JJ., concur.

Ordered that the judgment is affirmed.